In the Matter of the Accounting of the UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee of the Trust Known as the GARDINER'S ISLAND TRUST Created Under the Will of SARAH D. GARDINER, Deceased.

ROBERT D.L. GARDINER, Appellant, v UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee of the Trust Known as the GARDINER'S ISLAND TRUST, et al., Respondents.

First Department, July 2, 1992

### APPEARANCES OF COUNSEL

*Chester J. Straub* of counsel *(Ira H. Lustgarten, John J. Halloran, Jr.,* and *Sean Anderson* with him on the brief; *Willkie Farr & Gallagher* and *Joseph R. Attonito,* attorneys), for appellant.

*Theodore R. Wagner* of counsel *(Lawrence F. Carnevale* with him on the brief; *Carter Ledyard & Milburn,* attorneys), for United States Trust Company of New York, respondent.

*Arthur Norman Field* of counsel *(David Wray* with him on the brief; *Shearman & Sterling,* attorneys), for Alexandra Creel Goelet and others, respondents.

**OPINION OF THE COURT**

MILONAS, J. P.

Gardiner's Island, a 3,300-acre land mass that is located at the eastern end of Long Island and is home to many species of wildlife, is considered to be of unique environmental and historic value. It has been owned by the Gardiner family since 1639, but in recent years members of the family have engaged in repeated litigation concerning the right to occupy, lease or sell the island. The present dispute arises out of the second codicil to the will of Sarah Diodati Gardiner, who died childless in 1953.

Although Sarah Gardiner originally intended to bequeath the island outright in equal shares to her nephew, petitioner Robert D.L. Gardiner, and her niece, Alexandra Gardiner Creel, she later changed her mind as reflected in the second codicil. Pursuant to this codicil, Sarah provided that the island would be held in trust until Robert and Alexandra had both died and it would then pass absolutely to their issue. Since Robert, who is now in his eighties, never had any children, the only issue are through Alexandra. When Alexandra died in 1990, she was survived by a daughter, the mother of two children, and by the two children of a predeceased son. At the time that Sarah executed the second codicil, she wrote an accompanying letter in which she expressed her hope that respondent trustee, the United States Trust Company of New York, "will not exercise your right to sell this island unless you are fully satisfied that neither my nephew nor my niece, nor any of their descendants, will be in a position to use the island as a home. If you should determine that it is desirable to sell Gardiner's Island, I would like to have it sold, if possible, to a member of the Gardiner family even if this might mean obtaining a smaller purchase price than an outsider would be willing to pay * * * It is my particular wish that the island should not be sold to any individual or organization for the purpose of converting the same into a club or a real estate development."

During the first decade of the trust's existence, the income produced by the fund which Sarah had set up to maintain the island was more than adequate to pay for all of the necessary expenses. In order to defray the cost of the island, Sarah had rented it for use as a hunting preserve so that until 1962, when the long term lease expired, surplus income was engendered, and this was duly distributed to Robert and Alexandra.

However, the island was not thereafter rented (respondents claim that Robert refused to approve leasing for any purpose), depriving the trust of rental income. In addition, expenses increased along with inflation, and the trust income became insufficient to meet costs. The trustee was compelled to invade the principal of the fund to pay for the island, and by 1977 the maintenance fund had been severely depleted. The trustee, therefore, by petition dated July 28, 1977, sought clarification from the Surrogate's Court as to whether it could borrow funds, lease or sell the island or pay only such maintenance costs as the trustee in its discretion deemed to be proper. The Surrogate ultimately ruled that it was incumbent upon both branches of the family to pay equally for the island's charges. Further, the court determined, "[i]n the absence of voluntary participation by one family, that family shall lose the use of the Island. In the event neither family shall contribute its equal share of the expense, the court shall be constrained to declare the trust terminated as impossible of fulfillment." Robert appealed, urging that the island must be sold and half the proceeds be accorded to him. This court affirmed, merely noting that "[w]e do not pass upon the rights of the parties in the event of the death of respondent-respondent Alexandra Gardiner Creel leaving appellant Robert D.L. Gardiner surviving" (79 AD2d 549).

In the 1980's, Alexandra's side of the family paid most of the money for the maintenance of the island and thereby enjoyed exclusive occupancy of the island for a great part of that time. Yet, shortly after Alexandra died in late 1990, Robert brought the instant petition, alleging that, as the surviving life tenant, he possessed the exclusive right to Gardiner's Island, to authorize a lease or sale of the island and to contribute funds to the trust. He further sought an order directing a sale or lease of the island, with the proceeds thereof to be distributed in conformity with the terms of the trust. The trustee and the Creel family both opposed the application. In denying the petition, the Surrogate Court observed that it "agrees with almost none of petitioner's contentions" and, "[t]hus the existing plan making Gardiner's Island available for use by both family branches on condition that they pay for its maintenance shall continue in place as an effective implementation of the rights of the parties, in light of the trust's shortage of funds, despite the niece's death." The court rejected Robert's assertion that it was crucial that the payments made by Alexandra's family did not

come from their personal funds but were supplied by either Robert G. Goelet, Alexandra's son-in-law, or some legal entity established by him, noting that "[w]hether the contribution to maintenance comes directly from the niece's issue or is made on their behalf and with their approval by a spouse or anyone else is irrelevant since the testatrix' intention to retain the Island for occupancy by the family is being carried out."

■ ■ On appeal, petitioner contends that the Surrogate's Court improperly ignored the clause of the trust which permits invasion of the principal to maintain the island, which he interprets as requiring the trustee to sell the island or parts thereof if the fund is exhausted, that Robert Goelet's actions over the last decade have frustrated the intent of the testatrix and that, at any rate, changed circumstances necessitate that the trust be terminated. There is no merit to any of these arguments. According to the second codicil to Sarah's will:

"In the event that I own Gardiner's Island at the time of my death, then I give, devise and bequeath to United States Trust Company of New York, as trustee, all of my right, title and interest to Gardiner's Island * * * to hold, manage and maintain the said island during the lives of my nephew Robert David Lion Gardiner and my niece Alexandra Gardiner Creel, and the survivor thereof. Upon the death of the survivor of my said nephew and niece, I dispose of the said island and mortgage thereon as follows: I give, devise and bequeath One-half (1/2) thereof to the then living issue of my said nephew in equal shares *per stirpes* and the other One-half (1/2) to the then living issue of my said niece in equal shares *per stirpes,* all such issue to take as tenants in common. In the event that either my said nephew or my said niece should leave no issue then surviving, then I give, devise and bequeath all of such property to the then living issue of the nephew or niece, as the case may be. In the event that there should be no issue of either my said nephew or my said niece living upon the death of the survivor, then I give, devise and bequeath such property to Yale University in the City of New Haven, Connecticut.

"In order to enable United States Trust Company of New York to maintain Gardiner's Island during the lives of my said nephew and niece and the survivor thereof, I further give to United States Trust Company of New York, as trustee, a sum which shall, in the opinion of my executor, yield sufficient income to meet the expenses of maintaining the said

island and all the buildings located thereon. For the purposes of this will, the word 'maintaining' shall be deemed to include the payment of all property taxes assessed against the island, insurance charges and all other ordinary expenses involved in keeping up the island and the buildings thereon in the same state of repair as they may be at the time of my death, reasonable wear and tear excepted. The word 'maintaining' shall also include the salary of such person or persons as may be required from time to time for the purpose of keeping the island and the buildings thereon in a proper state of repair, but shall not include any personal living expenses attributable to the occupancy of the island by either my said nephew or my said niece and their respective families.

"I direct United States Trust Company of New York, as such trustee, to invest the fund received for the maintenance of Gardiner's Island in the manner provided in Article SEVENTH of my will, to collect the income thereon and to apply so much of the net income therefrom as may be necessary for the maintenance of Gardiner's Island, as hereinabove defined, and to pay over annually the surplus income, if any, in equal shares to my said nephew and niece during their joint lives. Upon the death of whichever of said persons shall first die, if that person shall leave issue him or her surviving, then, during the continuance of the trust to pay over to such issue living upon each distribution date in equal shares *per stirpes* the One-half (1/2) of the surplus income which their parent would have received if living. Upon the death of the survivor of my said nephew and niece, I direct my trustee to pay over and distribute the property then constituting the principal of the trust estate, together with all income accrued but uncollected thereon, as follows: One-half (1/2) thereof to the then living issue of my said nephew in equal shares *per stirpes* and the other One-half (1/2) to the then living issue of my said niece in equal shares *per stirpes*. In the event that either my said nephew or my said niece should leave no issue living at that time, then I direct that all of said property be paid over to the then living issue of the other of said persons. If, however, neither my said nephew nor my said niece should leave issue living at that time, then I direct that the same be paid over to Yale University in the City of New Haven, Connecticut.

"In the event that the net income from the said trust should in any year be insufficient to pay the expenses of maintaining Gardiner's Island, then I authorize and direct my trustee to

make good any such deficit or deficits out of the principal of the trust estate.

"In determining the amount of the fund to be set aside for the maintenance of Gardiner's Island, as hereinabove provided, I direct that my executor shall not take into consideration any rental payments which are to be received after my death from any lease of the island which is outstanding at the time of my death. Any rentals which may be collected by my trustee under such outstanding lease, or any subsequent lease, shall, however, be considered for all purposes as additional income of the trust fund and shall, to the extent that they are not required for the payment of maintenance expenses, be distributed annually as part of the surplus income, as hereinabove provided.

"I authorize and empower my trustee, with the written approval of my said nephew and niece during their joint lives, and with the written approval of the survivor thereof, thereafter to negotiate any lease or renewal of an existing lease of Gardiner's Island for such term and upon such conditions and at such rental as my said trustee, in its discretion, may deem advisable. It is my desire, however, that after the termination of the presently existing lease to Winston Guest, my said nephew and niece, or either of them, shall have the right to occupy Gardiner's Island as a home, and it is my hope that they shall exercise this right. For this reason my said trustee is authorized to lease the island only in the event that neither my nephew nor my niece desires to occupy the same as a home.

"Anything hereinabove to the contrary notwithstanding, if at any time during the joint lives of my said nephew and niece they should advise my trustee in writing that neither they nor any members of their respective families desire to exercise their right to occupy Gardiner's Island, then my trustee may, but shall not be bound to, dispose of said island at such price and upon such terms and conditions, either for cash or partly for cash and partly upon bond secured by mortgage, as it shall deem proper. Without in any way limiting the power of sale herein conferred upon my trustee, it is my wish that in considering the advisability of sale my trustee be guided by a letter deposited with this codicil in which I have expressed my thoughts on this subject. In the event of the sale of Gardiner's Island, the trust herein created shall immediately terminate and the property then on hand, includ-

ing the proceeds of sale of the island, shall thereupon become distributable in equal shares to my said nephew and niece."

Nothing contained in the subject codicil supports petitioner's position in the least. It is uncertain how he came to the conclusion that the clause authorizing the trustee to invade the principal not only mandates termination of the trust, but requires such a result after Alexandra's death rather than before despite the fact that the trustee has been encroaching upon the principal for many years. Certainly, the codicil itself merely provides that if the net income from the trust should in any year be insufficient to meet the expenses for Gardiner's Island, then the trustee is directed to make good any deficit from the principal. It makes no reference to any sale or termination in such a circumstance. Indeed, under the language of the codicil, a sale of the island is permitted in only one specific instance: "during the joint lives of my said nephew and niece" in the event that "they should advise my trustee in writing that neither they nor any members of their respective families desire to exercise their right to occupy Gardiner's Island". Moreover, even in this situation, the trustee has the discretion to dispose of the island upon such terms as it deems proper; a sale is not compulsory. Similarly, the trustee is empowered in its discretion to lease the island with the written approval of both Robert and Alexandra during their joint lives, or the survivor thereof, but is not required to do so.

The clear intent of the testatrix was to make the island accessible to all members of her family and keep it in the family for as long as possible. Alexandra's death did not convey exclusive occupancy rights upon Robert. Thus, Gardiner's Island was, after the death of the survivor of Sarah's nephew and niece, devised in equal shares to the living issue of Robert and Alexandra or if either of them was without issue, in this case Robert, the issue of the other would inherit. Consequently, Alexandra's issue will acquire Gardiner's Island outright upon Robert's death, and they will be able to retain or dispose of the island as they choose. The second codicil, however, does not grant Robert the same options; it merely allows him to avail himself of the island for the remainder of his life.

As for petitioner's attack upon the actions of Alexandra's son-in-law, Robert Goelet, which also forms the basis for Robert's change in circumstances argument since he perceives Goelet's conduct to be detrimental to the purposes of the trust,

it is undisputed that the descendants of Alexandra have assigned their remainder interests to a trust managed by him. Petitioner charges that Goelet, through complex financial manipulations, has effectively usurped control of Gardiner's Island from the intended beneficiaries. Yet, the record does not demonstrate any substance to petitioner's claim. Robert Goelet and his wife, Alexandra's daughter, contributed payment for most of the expenses involved in maintaining the island during the 1980's and into the 1990's, and, after Alexandra's issue had voluntarily assigned their rights to Gardiner's Island, Goelet made an absolute gift of their remainder interest to a trust for the benefit of his descendants, who are also the beneficiaries of the Gardiner Island's Trust. At any rate, as the Surrogate aptly found, this arrangement is simply irrelevant to any rights under the trust; it certainly does not constitute the sort of altered circumstances which supports termination of the trust.

■ A modification of the Surrogate Court order is necessary, however, in another respect. Notwithstanding that this court previously affirmed the prior Surrogate Court decision that made use and occupancy of Gardiner's Island conditional upon supplying funds for maintenance of the island, and none of the parties have sought an adjustment of that direction, the fact remains that there is no legal authority for the great transmutation which has been judicially imposed upon the original trust instrument. Although members of the family are, of course, free to contribute to paying for the expenses of the island, the second codicil itself in no way compels them to compensate for any shortfall in the income of the trust. Therefore, use or occupancy of the island cannot be made contingent upon financial contribution to its maintenance. On the contrary, it is evident that Sarah wanted both her nephew and niece and their issue to enjoy the pleasures of Gardiner's Island, and the courts cannot make them pay for it when Sarah did not. In the unlikely event that the fund becomes entirely depleted prior to the time that the island passes outright to Alexandra's issue, or arrangements to supplement trust income through leases to parts of the island are not practicable or forthcoming, or there are no voluntary contributions from the family to meet the costs of the island, only then will it be appropriate to determine what to do next.

Consequently, the decree of the Surrogate's Court, New York County (Eve Preminger, S.), entered on March 4, 1991, which denied petitioner's application to require the trustee to

sell or lease Gardiner's Island for lack of funds to maintain it, is modified on the law to the extent of allowing the nephew and issue of the niece of the testatrix to use or occupy the island without contributing to its maintenance and otherwise affirmed, without costs or disbursements.

ELLERIN, KUPFERMAN, ASCH and KASSAL, JJ., concur.

Decree, Surrogate's Court, New York County, entered March 4, 1991, modified, on the law, to the extent of allowing the nephew and issue of the niece of the testatrix to use or occupy the island without contributing to its maintenance and otherwise affirmed, without costs and without disbursements.